Good morning and may it please the court, Christopher Connolly from the U.S. Attorney's Office on behalf of the government. In every case where it is considered the issue, the Supreme Court has affirmed the constitutionality of detention incident to removal proceedings. And in doing so, the court has never placed the burden on the government to justify continued detention at a bond hearing, much less by clear and convincing evidence. Not only has the Supreme Court upheld mechanisms for release on bond in which the alien bears the burden of justifying release, but it is routinely authorized detention where an individual's flight risk and dangerousness is categorically presumed and not subject to any individualized review. These precedents establish, first, that detention is a constitutionally valid aspect of the deportation process, second, that the Attorney General's exercise of discretion in this sphere is valid if it advances a legitimate government purpose, and third, that detention may be constitutionally permissible even absent any individualized review. All of these points weigh heavily against the heightened burdens that the district court placed on the government here. Christopher Connolly Does that, would you say that's true after an extended period of time, such as the 14 months of detention that we had here? Michael McGill That remains true even after that extended period of time, Your Honor. The principles articulated by the Supreme Court in its immigration detention case law would still apply. I guess this gets to the alternative grounds for affirmance that Mr. Velasco set forth in his brief, as the government indicated. Christopher Connolly Judge Parker, before you get to the alternative grounds, is it the government's position that the, that its ability to hold an alien who is not a flight risk and not dangerous has no temporal constraints whatsoever? Michael McGill Well, Your Honor, I think that the constraints in that regard are inherent in the procedures that 1226A and its related regulations set forth for evaluating flight risk and dangerousness. An individual who is subject to detention pursuant to that provision, unlike some of the other detention provisions, is entitled to, first, a custody review before an ICE officer, second, a bond hearing before an immigration judge, third, an appeal to the Board of Immigration Appeals. And even after all of that is completed, if there are changed circumstances during the pendency and removal proceedings that bear on flight risk and dangerousness, the individual can seek a second bond hearing before an immigration judge, which is also appealable to the BIA. So those are the procedures that are in place for determining at the outset whether an individual who is detained pursuant to 1226A actually is a flight risk or a danger. And that's consistent with both the Supreme Court case law in this area, and it also, as we set forth in our brief, satisfies that these factors. Indeed, as the Supreme Court recently recognized in PREACT, Section 1226A gives the government broad discretion to either detain or release most aliens during the pendency of their proceedings. And I've gone through the three levels of review and the possibility of additional review that go into that. Could you talk to me about Laura for a minute and Singh, which, you know, not all of them disappeared after the Supreme Court's decision in Jennings, which was a statutory construction case. But Justice Alito explicitly said that the Court wasn't addressing the constitutional questions that were pivotal for the District Court here. Why shouldn't our Court be guided by those constitutional concerns that we reviewed in Laura and that NYSERC didn't think? Certainly, Your Honor, and let me walk through a number of reasons why Laura should not guide this Court's decision here. First of all, Laura rose in a different statutory and factual posture. That was detention under 1226C, which is mandatory detention without a bond hearing. And in addition, it was detention under 1226C that had lasted for more than six months when the Court said that's when a bond hearing was going to be required as a matter of constitutional avoidance. That's different from the posture here. I realize that we have a different statutory basis, but we're all within Section 1226, and in those cases, we address constitutional concerns. The Supreme Court's decision, as I understood it, focused on what was the reasonable construction of the statute as a statutory matter and didn't reach the constitutional concerns, some of which guided our analysis. Do you agree that those constitutional concerns need to be addressed in this context as well? That the constitutional concerns of detention that lasts a certain length of time? Potentially indefinite duration and the alien bearing the burden of proving lack of flight risk and lack of danger, as opposed to the usual situation where an individual is deprived of liberty in our country for an extended period of time, where the government bears the burden of showing that confinement is necessary? Well, first, Your Honor, in recent decisions like Jennings and Priatt, the Supreme Court has made clear that detention under 1226A or under 1226C is not potentially indefinite. There is a temporal limit on that detention because removal proceedings will end, and once those proceedings end, detention pursuant to those statutes is no longer pursuant to those statutes. Counsel, this is Judge Parker. When you can free up some time, I'd appreciate your response to Judge Carney's question, because it's a question, the answer to which I'm interested in as well. Absolutely, Your Honor. Let me make sure that I'm answering the question that both of you are posing to me. The question is whether— Counsel, she's asked it twice, and you haven't answered it yet. So please, if you, as I said, we would appreciate an answer to this question, which is an important one in this case that she asked you. I'm asking about constitutional considerations. I mean, under 1226, the government has the authority to detain aliens in different circumstances and for different reasons in 1226A and C. Nonetheless, Flora discussed and Singh discussed constitutional limitations on that authority granted by Congress, and I'd like to know if you agree with me that those constitutional questions were not resolved in Jennings and that the analyses presented by Flora and Singh on the constitutional questions, as opposed to the statutory questions, remain valid ones. Okay. Understood, Your Honor. Do you agree with that proposition? Yes, that the constitutional issues were not decided by Jennings. That's correct. That was dealing with constitutional avoidance, not the constitutional questions. As for the continued viability of Singh and the related case law in the Ninth Circuit, the petitioner has put in a 28-J letter where, with respect to at least Singh, the Ninth Circuit asserts that those cases are still valid. I think, particularly since this court is not bound by that Ninth Circuit precedent, it's worth considering Judge Fernandez's dissent in that Aleman case, which discusses why, in his view, notwithstanding the fact that maybe as a technical matter Jennings was not determinative of the issues raised in Singh and that constellation of cases out of the Ninth Circuit, why the proper effect of Jennings should be read to effectively overrule those cases. And with respect to Laura's holding on burden of proof, it was a brief consideration, citing to the Rodriguez case, it's not necessarily determinative of the outcome here in the government's view. Why was that brief analysis wrong, in your opinion? For the reasons set forth in our brief, Your Honor, and, first of all, with respect to the Supreme Court case law, again, the broad principles that come out of that case law are the overall validity of detention, the broad discretion that the Attorney General has. But the overall validity of detention is not the issue. I mean, yes, someone going through these proceedings can be detained. The question is, who's burdened? And in all of the Supreme Court cases, none of them… Why shouldn't the burden be put on the government? There are a number of reasons, Your Honor, and perhaps it's worth considering some of the You have one minute. Certainly. Very briefly, in matter of gara, the BIA precedent decision, and this is at page six of the government's brief, the BIA set forth a non-exhaustive list of factors that immigration judges should be considering when making these bond determinations. And a lot of those factors, particularly the ones going to flight risk, deal with things like the individual's fixed address, family situation, ties to the community, work history, education history, things that are going to be primarily in the possession of the alien and not the government. And indeed, here, Mr. Velasco explains that he put in voluminous information concerning his background. If the burden was on the government as opposed to Mr. Velasco, aliens would be unlikely to have any incentive to provide that kind of information, which is important for the immigration judge to make his decision. Indeed, even with respect to dangerousness and issues of criminal history, it's clear here that Mr. Velasco did have information that he provided to the court, including charging documents and arrest record that the court found necessary to make that evaluation. He disagrees. He disagreed with the need to put those in and with the ultimate weight that the immigration judge gave to them. But it wasn't the case that as a practical matter, this was not information that he was able to provide to give a full record to the immigration court to make an informed decision about flight risk and dangerousness and bond. All right. Counsel, would you agree that many, if not most of these individuals, one, are not represented by counsel. In many cases, they are incarcerated at facilities that are at a considerable distance from where they live. And moreover, in many of these cases, English is not their first language, and many of them indeed are illiterate. Your Honor, that may well be the case in any number of situations. Certainly, that's true. But those would be impediments to this process, regardless of where the burden is placed. And certainly, even in those situations, there would be some ability, presumably, for an individual to set forth the kinds of information that's going to be necessary for the immigration court to make that decision. And that's information that only that individual would have, that the government oftentimes is not going to have access to. Thank you. You have some time. Go ahead, Judge Parker. No, no, no. I waive my questions. All right. Well, you can ask it on rebuttal. Mr. Kahn only has two minutes for rebuttal. We'll hear from the other side. Ms. Donah? Good morning, Your Honor. May it please the Court, Julie Donah with the Legal Aid Society for Mr. Velasco-Lopez. The government makes the remarkable claim that it may detain anyone it alleges to be a removable noncitizen without making any showing that detention is necessary, and that the burden should then fall on the respectfully request that this Court affirm the district court decision. And I'd like to just address three points. The first is that contrary to the government's argument, given how immigration detention and bond proceedings work, placing the burden on the government will meaningfully reduce the risk of error in the system and the frequency with which the government erroneously locks people up. Second, there's just no reason to depart from the well-established standards about what a constitutionally adequate bond hearing when somebody's liberty is at stake. You know, and these standards were followed by this Court and Laura following constitutional analysis. And finally, although the government relies heavily on Damore and Carlson in particular in its briefing, these cases involve different challenges and narrow detention statutes where dangerousness could be presumed based on specific criteria. And these cases don't support a individual who falls within 1226A, which is a very broad detention statute that can be applied to the million-plus individuals who are in removable proceedings right now. There's no reason to presume that those individuals are dangerous or flight risk. So just turning to the first point about the current procedures in immigration detention and how bond proceedings work, so immigration detainees are locked in jails and other secure facilities. They're made to wear jumpsuits and they're subjected to severe restrictions on their movement and contact with the outside world. So in this context, the risk of erroneous bond denials is high. The documents that are the most probative to dangerousness and flight risk are criminal court documents, other government documents, and information documents from the immigrant's own A-file or alien file. And the government is in a superior position to access those documents. And the importance of those documents is clear from this record. Although Mr. Velasco provided letters upon letters from friends and family and evidence of rehabilitation and honor roll certificates from his high school, the immigration judge just immediately narrowed in on the criminal records. And it's far easier for DHS to access this information. They have a number of databases and regulatory powers to access this information and a large staff and funds to collect this information as compared to a non-citizen who's stuck in a jail cell. And these problems are especially acute if a detainee lacks counsel, which is the norm. And so this court noted, and Laura, that many individuals who are subject to 1226C, which is the mandatory detention statute predicated on criminal convictions, even in that category, many individuals are not dangerous and they're not flight risk. And the risk of error here is especially high because 1226A can be applied to any individual who's charged as removable. There's no narrowing characteristic. Let me ask you a general question, if I could, about the case law. The government presents a number of arguments seeking to distinguish the precedent that your arguments cite regarding due process concerns and the need for hearing and the allocation of burden of proof. And it distinguishes between those that concern indefinite detention and those that, you know, such as a civil commitment, and says that, you know, here, this is pending removal. There's a extended lately event at which that would occur and the revolution prostitutes would have been undertaken. It also kind of points to the overlay of the government's primacy, the primacy of the executive and legislative grants and immigration that's kind of flavoring the difference between the two sets of cases. What would you say to that effort to distinguish those cases? Why aren't those in quite a different sphere than immigration detention, which has an end point and which has the primacy of the other branches involved? Yes, Judge Kearney. So, the due process precedents that we said in our brief are highly relevant to the immigration context for a number of reasons. Those due process precedents themselves, the civil commitment and Salerno from the pre-trial detention context, they themselves rely on immigration precedents as another example in which there are important individual interests that need to be protected under some sort of under a heightened burden. So, you know, the Supreme Court itself, as well as the Ninth Circuit in seeing didn't distinguish between those different those different precedents. And also, for good reason, Salerno, the pre-trial detention case, also dealt with a situation in which there was the same sort of definite endpoint that there is in immigration detention. And yet, the heightened standards were still important to the Supreme Court's decision in that case approving of the Bail Reform Act. And similarly, you know, even in a civil commitment context where indefinite detention is possible, there's still regular review and the heightened standards don't kick in when the detention begins to appear to be indefinite. On day one, you get a hearing with clear and convincing evidence standard because that's what due process requires. And what are we to make of the argument that the Supreme Court, while not having expressly ruled on this particular question that's before us, has had it presented in, that's been the context for a lot of its rulings in the immigration context, where it's not adversely commented on the allocation of burden of proof. And on the contrary, it's pointed to the broad discretion of the Supreme Court. There is a kind of hearing that happens here. One can apply for review at different times. There are procedural safeguards. Isn't it still kind of troubling that the Supreme Court, if this is such a clear due process violation, the Supreme Court said nothing? Well, those issues were not raised before the Supreme Court, so it would have had to go out of its way to grab at a constitutional issue that only case in which the burden of proof and the constitutionality of the burden of proof was addressed by the Supreme Court was Zedvitas. And I think that Zedvitas actually works in our favor. In Zedvitas, the Supreme Court did two things about presumptions or about burdens. It approved of a presumption that a non-citizen who had been ordered deported would, in fact, be deported. And the non-citizen had the burden of showing otherwise initially. But that's a reasonable presumption. By contrast, in Zedvitas, the Supreme Court disapproved of a regulation that put the burden on the non-citizen to disprove dangerousness and disprove flight risk. And the court cited the civil commitment case law as guiding that analysis and noted that even disputes over mere property demand more process. So I think that we have to look most closely at the full Supreme Court case that addressed that issue. And you would say also that their due process case law cites freely, you know, travels from civil to immigration with barely a hiccup. Yeah, that's exactly right. Adding to which we rely on, sites would be and quotes from would be the INS, which is an immigration case and noted the similarities between the loss of liberty and the loss of immigration status. And noting that similar burdens of proof applied. And going back to your question about the flavor of the political branches powers over immigration, we don't dispute that the one minute power. One minute, by the way. Yeah, we don't dispute that there is deference to the political branches about the substance of immigration policy. But the procedures, there have to be ample procedural safeguards to deprive an individual of an important interest. And that's just that's clear throughout the case law. So in conclusion, you know, I think it's just stepping back important to reflect on what it would mean to accept the government's position. It means that there's significant uncertainty about whether or not a non citizen needs to be locked up, we should err on the side of locking them up. The district court correctly held that this cannot be squared with the due process clause. And we respectfully request that this court confirm. And if there's no other questions, thank you. Thank you, Mr. Connelly. Yes, thank you, briefly regarding the interplay between the Supreme Court's immigration detention case law and its case law and the other civil commitments fears. The cases that Addington and some of the other civil commitment cases cite from the immigration context are in very different circumstances. There's would be which talks about the standard for removing an individual. And the citizen and the standard that the government is going to need to meet in order to, to strip someone of their of their citizenship. Those are very different circumstances than what we have here, which is the burden for detention during the limited period of time required to complete an individual's removal proceedings. And in the one immigration case, divide us that site to that civil commitment, body of case law, we're dealing with a statutory constitutional avoidance issue with an individual who was already subject to removal and was facing potentially indefinite detention because that removal was not going to be effectuated. And still, even there, the Supreme Court determined that the it was up to the individual to show that removable was not reasonably foreseeable. If the court has no questions, we respectfully request that the district court's judgment be reversed. Thank you. Thank you. We'll reserve decision.